AMOS NOYES v. THE ESTATE OF BENJAMIN HALL.

*Taxes paid recoverable in an action on book. Statute of limitations. Notes included under the term claims. Error in settlement.*

The plaintiff, a constable, had for collection several taxes against the intestate, between whom and the plaintiff there were running and mutual accounts, and it was understood that these taxes should be settled for as a matter of deal and account between them in the settlement of their other accounts; and the plaintiff paid over the amount of the taxes without collecting them. *Held* that he might recover the amount so paid in an action on book account.

A mutual agreement between two persons that they will take no advantage of the statute of limitations having run upon the other's claims, but that they will thereafter settle without objection on that account, will prevent the operation of that statute; and the expression of the opinion, by one of them, that there will not be anything due from him upon such a settlement, will have no effect.

Notes held by one party against the other, would be included under the term "*claims*" in such an agreement.

Upon a partial settlement, the amount of the intestate's account was ascertained and a due-bill given for it, which included items which the plaintiff had previously paid to a third person who was authorized to receive it. *Held* that the fact of such a previous payment might be shown, and that its effect was, not to vary the operation of, or contradict the due-bill, but to establish a valid offset to so much of it.

APPEAL from the decision and report of the commissioners upon the intestate's estate. The plaintiff filed a declaration on book, and also upon certain notes. An auditor was appointed and, by agreement, all the claims upon either side were referred to his decision, and he reported the following facts in reference to the claims which were disputed.

Under his declaration on book, the plaintiff claimed to recover the amount of several taxes assessed against the intestate.

The plaintiff was constable and collector of taxes in the town of Tunbridge, (where both parties resided,) from 1828 to 1838, excepting the year 1832; and the taxes charged, were legally assessed to the intestate, and he was liable to pay them. They were never charged to him upon any account book by the plaintiff, and no other account of them was kept by the plaintiff than retaining them upon the tax-bills, without crossing or cancelling them as he did in case of payment. The plaintiff produced the original tax-bills, showing all the taxes charged for in his account, except items No. 1 to 4, inclusive. The deceased had an accruing account with the plaintiff during all the time covered by the plaintiff's account, and it was understood by the parties that these taxes should be adjusted and settled with their other accounts, as matters of mutual deal and account, and they remained uncollected with the mutual expectation that they would be settled in that way; and the plaintiff, as collector, settled with the town and treasurer from year to year, and paid over the amount of all these taxes.

The plaintiff claimed to recover the amount of two notes, (not negotiable,) given by the intestate to the plaintiff, January 20, 1843, for $209.19 and interest, after April 1, 1843, to which there was no objection interposed except the statute of limitations, which was urged against this and all the items of the plaintiff's account.

On the 20th day of March, 1843, the parties were together at G. Rolfe's office in Tunbridge, to settle their accounts; they looked over the intestate's accounts to that date, and agreed upon its amount at $212.21, and not having time to complete the settlement, and adjust the plaintiff's account also, they postponed it to some future time, but wrote upon the defendant's book as follows.

" March 20, this day settled this book by due-bill to Hall, and made the same even up to this date, $212.21.

BENJ. HALL,

AMOS NOYES;"

And thereupon a due-bill was written and signed as follows.

" $212.21, March 20, 1843. Due Benjamin Hall, on demand, two hundred and twelve dollars and thirty-one cents to apply on settlement.

*Witness*, G. Rolfe.                                        AMOS NOYES."

And they then called Mr. Rolfe to witness that they had proceed-

ed so far in their settlement; and as they could not finish it, the parties both agreed, and desired Rolfe to recollect that as some of their deal was outlawed, or becoming so, neither of them would take any advantage of the statute of limitations having run upon the others claims, but that they would thereafter settle without objection on that account.

The parties then seperated, and each party occasionally, for some three years or more after this, asked Rolfe if he recollected, and wished him to remember their agreement in relation to waiving the statute of limitations.

The plaintiff afterwards called upon the intestate, a short time previous to the expiration of six years from the giving of the two notes of $209, for the purpose of renewing them, and adjusting their accounts, when the intestate told him he could not then settle with him, but would when he was able, but that he should not be owing him on settlement; and the plaintiff about this time, and before the statute had run on these notes, employed Mr. Sturtevant to go and talk with the intestate about them and their accounts, and he did so; and then the intestate told Sturtevant that it would not do for Noyes to sell those notes, as he (Hall) had offsets to them, but expressed a willingness to settle, and wished Sturtevant to assist them to settle, but said he did not owe Noyes anything. This conversation was in 1848 or 1849. Some time in the spring of 1851, Andom B. Noyes, a son of the plaintiff, asked the intestate why he did not settle with his father, to which the intestate replied that he had once commenced a settlement with him, but there were some things outlawed on both sides, and they agreed not to take any advantage of the outlawing, and that he was ready to settle any time when his father was.

The principal claim in favor of the intestate, was for the amount of the above mentioned due-bill, to the allowance of which the plaintiff did not object, but claimed a deduction from, or offset to it of $15.43, which was charged in the intestate's account for the work of one Wheeler, and included in the amount for which the due-bill was given; and in reference thereto, the following facts appeared.

The defendant owned a carding and cloth-dressing establishment, which Wheeler carried on, but on what terms or conditions, did

not appear. Said Wheeler had the charge of the establishment, and did such custom work as was brought in; and among other things, did work for the plaintiff to the amount of $15.43, and the plaintiff let Wheeler have such articles of provisions and produce as he wanted to some over two dollars more than Wheeler charged for the work, expecting the same to go in payment therefor, and charged the same to Wheeler on his book. Finding the work charged by the defendant, at the time of the giving of said due-bill, he objected to it, and informed the defendant that he had paid Wheeler for the sum; and thereupon the parties stopped for the plaintiff to ascertain about the charges by sending to Wheeler. The plaintiff sent a copy of his account to Wheeler, and Wheeler returned to him a receipt for the same, amounting to about two dollars more than the $15.43, charged for Wheeler's work.

The defendant objected to the testimony in relation to the amount of the Wheeler receipt, and the agreement to deduct that amount from the $212.21, on the ground that parol evidence was inadmissible to alter, vary, or explain the writing of the parties upon the defendants book, but the objection was overruled and the testimony admitted,

All of the foregoing items; viz, the charges for the taxes, the notes and the $15.43, were allowed in favor of the plaintiff by the auditor and referee, and also by the county court. Exceptions by the defendant.

*W. Hebard* for the defendant.

The taxes charged in the plaintiff's account were not proper subjects of book account, and cannot be recovered in that form of action. There was no money or other thing delivered, for which the right to charge subsisted; *Slasson* v. *Davis et al*, 1 Aiken 73; *Nason* v. *Crocker*, 11 Vt. 463; *Carpenter* v. *Dole*, 13 Vt. 578.

The distinction between what may and what may not be charged on book, is to be drawn from the character, and not from the amount of the deal; *Leach et al* v. *Shepard*, 5 Vt. 363.

These taxes were never charged to Hall; and if Mr. Hall was ever liable to him on account of these taxes, it must be established in some common law action.

The whole account, on both sides, is outlawed. A promise to

waive the statute would only amount to a new promise, and would run but six years ; *Munson* v. *Rice*, 18 Vt. 53.

To take the debt out of the statute by an acknowledgment, there must be no expressed unwillingness to remain liable for the debt; *Phelps* v. *Stewart et al*, 12 Vt. 256.

Hall on every occasion protested that the was not owing Noyes. When the defendant denies his indebtedness, it is virtually denying the justice of the claim ; and in such case, an agreement not to take advantage of the statute is not a sufficient acknowledgement to avoid the operation of the statute ; *Carruth* v. *Paige*, 22 Vt. 179.

But whether the acknowledgement was sufficient to remove the statute bar in relation to the account or not, it could have no such effect upon the notes.

The only evidence of a new promise in relation to the notes, came from Mr. Sturtevant. Hall said to Sturtevant that " it would not do for Noyes to sell those notes, as he had an offset against them ;" equivalent to saying " they are paid." This is. the same doctrine contained in *Carruth* v. *Paige*, above cited.

The item of $15.43 was improperly allowed.

*G. Rolfe* and *O. M. Lamb* for the plaintiff.

The facts found by the auditor and referee bring this case within the rule established by numerous authorities in this state, that an admission of a present indebtedness, or an acknowledgement of subsisting demands, or the expression of a willingness to settle and adjust existing accounts and demands, is equivalent to a promise to pay, and thus takes the case out of the operation of the statute of limitations ; *Olcott* v. *Scales*, 3 Vt. 173 ; *Burlow* v. *Bellamy*, 7 Vt. 54 ; *Phelps* v. *Stewart*, 12 Vt. 256 ; *Blake* v. *Parleman*, 13 Vt. 574 ; *Chapin* v. *Warden*, 15 Vt. 560 ; *Minkler* v. *Est. of Minkler*, 16 Vt. 194 ; *Carruth* v. *Paige*, 22 Vt. 179 ; and in such case, the opinion, belief, or protestation even, of the party promising, that he does not owe, will not alter his liability in this respect; *Williams* v. *Finney*, 16 Vt. 297 ; *Paddock* v. *Colby*, 18 Vt. 485 ; *Burton* v. *Stevens*, 24 Vt. 131 ; *Cooper* v. *Parker*, 25 Vt. 502.

The plaintiff's claim for the amount of the Wheeler receipt was properly allowed. From the facts, as detailed, the auditor must

have found that the defendant had no right to claim this of the plaintiff, and that the defendant agreed to deduct it from the amount minuted on the defendant's book, on the production of a receipt from Wheeler; and the county court in accepting the report, must have found the same facts directly, or must have inferred such facts from matters stated by the auditor and referee in his report, and their judgment therein will not be disturbed in this court; *Stone et als* v. *Foster*, 16 Vt. 546; *Birchard et al* v. *Palmer*, 18 Vt. 203; *Barber* v. *Britton et al*, 26 Vt. 112.

The tendency of the testimony was not "to alter, vary or explain the writing of the parties," but to prove an independent fact ; that is, an agreement to refund the amount on producing Wheeler's receipt, which amount the defendant was not entitled to retain ; 1 Greenleaf's Ev. Sec. 284.

The opinion of the court was delivered by,

BENNETT, J. We see no reason why, from the facts reported, the plaintiff may not recover, in this form of action, for the amount of the monies paid by the plaintiff for the taxes which he had in his hands, for collection, against the intestate. There were all the time mutual and running accounts between the parties, and the case finds that it was understood between them that the taxes should be adjusted and settled with their other accounts, as matters of mutual deal and account.

We think the defense set up under the statute of limitations can not succeed. In March, 1843, the parties commenced . a settlement of their dealings, and found the amount of Hall's claims against the plaintiff to be $212.21, and, not having time to complete the settlement, the plaintiff gave the intestate his due bill for that sum, to apply on settlement, and it was then agreed that "neither party would take any advantage of the statute of limitations having run, or being about to run upon the other's claims, but would thereafter settle without any objection on that account." It is evident, from the facts reported, which may be referred to, that this agreement was kept upon foot by the parties, at least down to the spring of 1851, when Hall said to the plaintiff's son that he and the plaintiff had a settlement to make, and that there were some things outlawed on both sides, but they had agreed to take no ad-

vantage of the statute of limitations, and that he was ready to settle at any time. The notes in question are included in the term claims, and were clearly within the agreement of the parties, excepting them from the effect of the statute of limitations. The opinion that Hall may have expressed that he should not be owing the plaintiff upon a final settlement, cannot have any effect upon the agreement to waive the statute.

We think the item of $15.43 in the plaintiff's account, should be allowed him, notwithstanding the same sum was included in the intestate's account, and went to make up a part of the $212.21, for which the due-bill was given. This item of $15.43 was for carding wool and dressing cloth, done by one Wheeler, in the employ of Hall; but it is found that the plaintiff, from time to time, let Wheeler have produce, expecting that it would go in payment of this account, and charged the same to Wheeler.

When the parties suspended their settlement, the auditor finds that the plaintiff objected to this item in Hall's account, upon the ground that he had paid it in produce to Wheeler, and the settlement was delayed to ascertain how that fact was. In doing this, there was an implied admission by Hall that Wheeler had the right to receive pay, and the plaintiff might transfer his account against Wheeler to his account against Hall. At the time the due-bill was given, this charge of $15.43 was a subsisting item in Hall's account, and the charge of the plaintiff, though made to Wheeler, was a subsisting account, to be applied in payment, and both were kept upon foot, subject to a future application. The effect of the finding of the auditors was not to contradict or vary the operation of the due-bill, but to set up a subsisting item in the plaintiff's account, which would, in effect, balance so much of Hall's account embodied in the due-bill. This being the effect of the finding of the auditor, I see no reason why we should not give it full operation.

Judgment affirmed.